**ESTOPAR HOLDINGS, INC. and Intertech Venture Corporation, Appellants,**

v.

**ADVANCED METALLURGICAL TECHNOLOGY, INC., Frankie J. Kelley, Individually, and James B. Smith, Jr., Individually, Appellees.**

No. 2–89–225–CV.

Court of Appeals of Texas, Fort Worth.

May 11, 1994.

Rehearing Denied June 14, 1994.

Markey & Ash, P.C. and Robert F. Jones, Jr., Arlington, Hooper, Evans & Kobs, and David Evans, Jeffrey H. Kobs, and Carla Conner, Fort Worth, for appellants.

William D. Herron, Jose, Henry & Brantley, and Rickey J. Brantley, Fort Worth, for appellees.

Before HILL, C.J., and DAY and FARRAR, JJ.

## OPINION

DAY, Justice.

Estopar Holdings, Inc. and Intertech Venture Corporation (appellants) appeal from a take-nothing judgment for Advanced Metallurgical Technology, Inc., Frankie J. Kelley, Individually and James B. Smith, Jr., Individually (appellees). We affirm.

The suit underlying this appeal arose from a contract dispute. Appellants pleaded four causes of action: (1) a request for declaratory judgment that appellees owed appellants money and that the transaction was not usurious; (2) breach of contract; (3) unjust enrichment and restitution; and (4) entitlement to exemplary damages based on fraud. Appellees entered a general denial and raised the affirmative defenses of usury, waiver, and estoppel. After a bench trial, the trial court rendered judgment that appellants take nothing in their claims against appellees. The court also awarded appellees $8,797 in attorney's fees. Upon appellants' request, the court made and filed findings of fact and conclusions of law. Appellants then perfected their appeal to this court.

This court originally affirmed the trial court's judgment on April 10, 1991. Appellants filed their amended motion for rehearing on May 10, 1991. On January 27, 1992, we abated the appeal and remanded the cause to the trial court for clarification of the findings of fact and conclusions of law. We overruled appellants' motion for rehearing on August 30, 1993 but withdrew all our previous opinions and judgments on December 1, 1993. The case was resubmitted to this court on March 16, 1994.

A summary of the facts is necessary to a better understanding of our decision. In early 1986, the parties began negotiating a business relationship. Appellants had access to certain German technology; appellees had related technological expertise, as well as numerous marketing contacts in the United States. On May 1, 1986, Kelley, Smith, and Intertech Venture Corporation (Intertech) executed a Letter of Intent to Negotiate (the Letter of Intent). On June 5, 1986, Intertech, Fort Worth Heat Treating Company (FWHTC), and Advanced Metallurgical

Technology, Inc. (AMT) entered into a formal contract (the Agreement).

Originally, four individuals owned all the stock in FWHTC: Kelley, Smith, Roy J. Grogan, and J.M. Young. In a separate agreement (the FWHTC Agreement), these four individuals agreed that FWHTC would purchase Grogan and Young's stock, thereby acquiring all of Grogan and Young's interest in FWHTC. Appellants—who were not parties to the FWHTC Agreement—and appellees orally agreed that Estopar Holdings, Inc. (Estopar) would put up the capital necessary to purchase Grogan's and Young's stock.

Acting on information Kelley provided, Estopar purchased three cashier's checks: two for $25,000 and one for $17,666.59, for a total of $67,666.59. Grogan and Young each received one of the $25,000 checks in full payment for their FWHTC stock. The check for $17,666.59 was made payable jointly to Grogan and Young and was used to pay interest on a loan. When Grogan and Young received their money on May 29 or 30, 1986, they executed Agreements of Release. Apparently, they delivered their stock certificates to a banker named Bryans Fitzhugh, who in turn gave the certificates to Estopar and Intertech's attorney.

After the FWHTC Agreement was fully performed, Intertech, FWHTC, and AMT entered into their June 1986 Agreement. That Agreement provided, in pertinent part:

1. Kelley and Smith, as FWHTC's and AMT's only shareholders, would reorganize these two entities into a single Texas corporation referred to in the Agreement as "New AMT."

2. Kelley and Smith would each receive nineteen percent of New AMT's stock. Estopar would receive forty-six percent of the stock, and Intertech would receive sixteen percent.

3. Kelley and Smith would receive their New AMT stock in exchange for their AMT stock. Estopar would receive its New AMT stock in exchange for a capital contribution of $145,000. Intertech would receive its stock for services rendered to New AMT. Intertech's services were defined in the Letter of Intent and included securing new financing and procuring exclusive distributorships for appellants' German technology.

The record shows that the $67,666.59 Estopar put up to purchase Grogan and Young's stock and to make the interest payment on the loan is part of the $145,000 capital contribution Estopar agreed to make in exchange for its share of the New AMT stock. The balance of the $145,000 remained in Estopar's holding account or appellants' lawyers' trust account. That money was never paid to New AMT.

After the parties executed the Agreement, the arrangements for New AMT's financing began to founder. Various attempts to finance the business failed, and on August 1, 1986, appellees notified appellants by letter that appellees were immediately terminating all negotiations and agreements between the parties. At that time, neither Estopar nor Intertech had received any stock in New AMT. Appellants asked appellees to return to them the $67,666.59 that Estopar had put up to purchase Grogan and Young's stock. Appellees refused to pay appellants any money on the basis that they had never agreed to repay it. As a result, appellants filed the underlying lawsuit.

Appellants raise two points of error on appeal. In point one, they complain the trial court erred in rendering the take-nothing judgment because the court expressly found Estopar made a capital contribution to AMT and concluded that Estopar has an equity investment in AMT. In point two, appellants contend the trial court improperly awarded appellees attorney's fees.

■ In their First Amended Petition, appellants asked the trial court to

declare the legal rights and status of the parties, particularly, that the transaction is not subject to the penalties of usury, and that Defendants are liable, jointly and severally, to return to Plaintiff the sum of $67,655.59 which was transferred by Plaintiffs to Defendants, plus interest.

In their prayer, appellants requested damages in the amount of $67,655.59.[1] In the alternative, appellants asked for shares of stock in AMT in the amount of $67,655.59.

Appellants also alleged that appellees had breached an oral agreement to repay the $67,655.59 plus interest; that appellees would be unjustly enriched if allowed to retain the $67,655.59; and that appellees defrauded appellants. The trial court concluded that appellees did not breach any contractual duty to appellants; that appellees were not unjustly enriched at appellants' expense; and that appellees' activities did not constitute fraud. Appellants do not complain about any of these conclusions on appeal.

The trial court made the following findings of fact and conclusions of law pertinent to appellants' first point of error:

### Findings of Fact

. . . .

7. The three cashier's checks, totaling $67,666.59, constituted a part of the capital contributed by Plaintiff Estopar Holdings, Inc. pursuant to the . . . [A]greement.

8. There was no written agreement, and no oral agreement between Plaintiffs and Defendants for any future repayment of the said $67,666.59 by the Defendants.

9. Pursuant to the Letter of Intent and the . . . [A]greement, the Plaintiffs[2] represented to the Defendants that the Plaintiffs would

  a) obtain lines of credit for the "New AMT;" and

  b) buy equipment from a company known as "MPT West Germany" and provide that equipment for use in "New AMT;" and

  c) effect licensing of "New AMT" as the exclusive distributor of heat treating vessels manufactured by "MPT West Germany."

10. The Plaintiffs did not obtain such lines of bank credit, or provide such equipment, or effect such licensing for "New AMT" in accordance with the representations made by Plaintiffs to the Defendants.

. . . .

### Conclusions of Law

1. The Plaintiffs are not entitled to Declaratory Judgment under § 37.001, et seq., Texas Civil Practice and Remedies Code.

. . . .

3. The Plaintiffs have an equity investment of $67,666.59 in "New AMT," and such sum was not a loan to the corporation or Defendants Kelley and Smith.

. . . .

7. The Defendants are entitled to Judgment that the Plaintiffs take nothing from their causes of action alleged against the Defendants.

These findings and conclusions show that appellants' first point of error is somewhat misleading. In that point, appellants assert the trial court found they had made a capital contribution to and had an equity interest in AMT. The trial court actually found that *Estopar* had made a capital contribution to New AMT and that appellants had an equity interest in New AMT. We fail to grasp how Intertech can base its entitlement to AMT stock on *Estopar's* capital contribution. Intertech was to receive its stock in exchange for certain services to New AMT. Appellants do not dispute the trial court's finding that Intertech did not perform those services.

The trial court also made certain supplemental findings of fact and conclusions of law in order to clarify its original conclusion of law number three. Those findings and conclusions are:

### Supplemental Findings of Fact

. . . .

6. Although it had been agreed that the plaintiffs would become the holders of 145,000 shares in New AMT upon investing $145,000, the plaintiffs and defendants

---

1. Estopar actually paid $67,666.59 when FWHTC bought out Grogan and Young. The trial court used the correct amount in its findings of fact and conclusions of law.

2. Actually, Intertech made these representations. Estopar only agreed to make a $145,000 capital contribution.

failed to make any agreement as to a specific number of New AMT shares to which the plaintiffs could be entitled by investing only $67,666.59 and failing to fulfill their Letter of Intent, as found by this court in Original Fact Finding No[s.] 9 and 10.

. . . .

### Supplemental Conclusions of Law

. . . .

4. "Equity investment" in a corporation, such as the $67,666.59 spent by plaintiffs, is simply basic risk capital which has no timetable for its return, nor any guarantee that it will ever be repaid to the investor, unless the corporation does prosper and, through dividends or the eventual sale of its capital stock and/or assets, enables the investor to recover the money invested.

. . . .

6. Not being a loan, the $67,666.59 was an investment of capital by plaintiffs (through Estopar) in New AMT, and, since the plaintiffs and defendants failed to make any agreement as to an exact number of shares to which the plaintiffs could be entitled by investing only $67,666.59 and not fulfilling their Letter of Intent, this court has no power to specify a number of shares or make such an agreement for them.

7. A contribution of equity capital, without any agreement as to a specific number of shares to be received in exchange, entitles the contributor to have a capital stock account in his name on the records of the corporation, credited with the dollar amount contributed.

8. The plaintiffs are not entitled to have or recover monetary damages against the defendants.

In their brief, appellants do not assert that appellees agreed to repay the $67,666.59 plus interest. Indeed, appellants concede: "The Court's finding of no agreement on the part of [appellees] to repay the money in question is amply supported by the record." Appellants argue instead that Estopar is entitled to receive stock in AMT equal to its equity investment. For purposes of this opinion, we will assume, without deciding, that appellants' request for a declaratory judgment, coupled with the prayer for "shares of stock in the Corporate Defendant in the value of $67,655.59 [sic]," is a request for a declaratory judgment that Estopar is entitled to stock in AMT valued at $67,666.59. None of the cases appellants rely on supports their position.

First, appellants direct us to *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685 (Tex. 1981). The *Mead* court stated that a party in default on a contract is not relieved by the other party's subsequent breach. *Id.* at 689. Default by one party excuses performance by the other party. *Id.*

Appellants contend that because the trial court did not find Estopar breached the Agreement and because Estopar had partially performed under the Agreement, Estopar "was excused from paying additional funds to AMT, or making a tender of such funds." Appellants further contend that, "Under such circumstances, it is permissible for ESTOPAR to recover from [appellees] based upon its equity investment." Appellants neglect to state that the trial court expressly concluded appellees did not breach the Agreement. The rule set out in *Mead* is merely that *default* by one party (*i.e.*, appellees) excuses performance by the other party. *Mead*, 615 S.W.2d at 689. Since the trial court concluded appellees did not breach the Agreement, *Mead* is inapposite to appellants' position.

Appellants also rely on *Trahan v. Federal Sign Co. of Texas*, 412 S.W.2d 814 (Tex.Civ. App.—Houston 1967, no writ) and *Dockery v. Durham*, 3 S.W.2d 514 (Tex.Civ.App.—Waco 1927, writ dism'd). The rule of those cases is that a party may recover for partial performance of a contract if *prevented* from fully performing by the other party. *Trahan*, 412 S.W.2d at 815; *Dockery*, 3 S.W.2d at 519.

Neither of these cases is applicable to appellants' situation because there is no evidence appellees prevented Estopar from making the remainder of the $145,000 capital contribution. Smith testified that A.B. Kassir, one of Estopar's principals,

asked me when the stock was going to be transferred into [Estopar's] name, and I said as soon as you pay the money to the

company, and he said there was not going to be any money paid, and I said then there's not going to be any stock.

Peter Parsinen, one of Intertech's owners, testified that the remainder of the $145,000 was never paid to AMT, New AMT, or FWHTC, although that money was in Estopar's lawyers' trust account and was earmarked for New AMT. Parsinen further testified that Kassir was the only person who had any authority to do anything with Estopar's money.

Since the record expressly shows appellees were not in default under the Agreement and since there is no evidence appellees prevented Estopar from making the full capital contribution to New AMT, appellants' reliance on these cases is misplaced.

Moreover, appellants have not directed us to any place in the record where they put on evidence that they are entitled to *some* stock in AMT because of Estopar's $67,666.59 capital contribution. In addition, they cite no authority for allowing the trial court to summarily decide how much stock they are entitled to. Indeed, the trial court concluded it had no power to specify a number of shares because the parties did not address this situation in their Agreement. Accordingly, appellants' argument must fail. TEX.R.APP.P. 74(f); *Lakeway Land Co. v. Kizer*, 796 S.W.2d 820, 827 (Tex.App.—Austin 1990, writ denied) (complaint is waived when appellants fail to cite authority therefor).

▪ A take-nothing judgment is proper in a declaratory judgment action if, when considered in view of the issues in controversy, along with the trial court's findings of fact and conclusions of law, it fully declares the rights of the parties. *Estes v. Wilson*, 682 S.W.2d 711, 717–18 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.); *Downe v. Askey*, 529 S.W.2d 121, 124–25 (Tex.Civ.App.—Fort Worth 1975, no writ).

In this case, appellants asked the trial court to declare them entitled to $67,666.59 plus interest from appellees or to stock in AMT valued at $67,666.59. The trial court concluded appellants were not entitled to any money damages from appellees and that the court had no power to specify the amount of stock appellants should receive. We hold the trial court did not err in rendering a take-nothing judgment against appellants. Appellants' first point of error is overruled.

▪ In their remaining point, appellants complain the trial court improperly awarded appellees attorney's fees of $8,797 because there was no pleading or legal basis to support such a recovery.

Appellants point out that appellees did not request attorney's fees in their First Amended Original Answer. Appellants also contend that because the trial court found they did not·commit usury, an award of attorney's fees on that basis was improper.

The record·does not indicate why the trial court awarded appellees attorney's fees. The record does show, however, that the issue of attorney's fees was submitted to the court without objection. The parties stipulated in open court that they agreed to submit this issue to the court. In addition, amended finding of fact number fourteen, which appellants requested, reads:

14. The parties stipulated that the Fact issue of reasonable attorney's fees be submitted to the Court by affidavit, and such affidavits were filed with the Court.

Accordingly, the attorney's fees issue was tried by consent of the parties. *See* TEX. R.CIV.P. 67; *Gulf States Abrasive Mfg., Inc. v. Oertel*, 489 S.W.2d 184,. 186 (Tex.Civ. App.—Houston [1st Dist.] 1972, writ ref'd n.r.e.).

As for a legal basis for the award, one of appellants' causes of action was a plea for declaratory relief. In any declaratory judgment proceeding, the trial court may award costs and reasonable and necessary attorney's fees as are equitable and just. TEX. CIV.PRAC. & REM.CODE ANN. § 37.009 (Vernon 1986). Because the award of attorney's fees in a declaratory judgment action is discretionary, *see* section 37.009, we will not reverse the trial court's decision to grant or deny attorney's fees absent a clear abuse of that discretion. *Knighton v. IBM*, 856 S.W.2d 206, 210 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

■ Where a claimant has properly invoked the declaratory judgment statute, either party may plead for and obtain attorney's fees. *Hartford Cas. Ins. Co. v. Budget Rent–A–Car*, 796 S.W.2d 763, 771 (Tex. App.—Dallas 1990, writ denied). The award of attorney's fees is not limited to the plaintiff or to the party affirmatively seeking relief. *Id.* While we recognize that appellees did not plead for attorney's fees under any theory, we have previously held that this issue was tried by consent. The trial court's award of attorney's fees could have been based on its conclusion that appellants were not entitled to a declaratory judgment.

Although we do not know the basis for the trial court's award of attorney's fees, the party seeking review has the burden of presenting a record sufficient to show error requiring reversal. TEX.R.APP.P. 50(d). Thus, appellants had the burden of presenting us with a record showing the trial court's award of attorney's fees was *not* grounded in the Declaratory Judgments Act or was otherwise erroneous. Appellants did not carry this burden.

Because the attorney's fees issue was tried by consent and because appellants failed to present a record showing the trial court's ruling was improper, we hold the trial court did not abuse its discretion in assessing attorney's fees against appellants. We overrule point of error two.

The trial court's judgment is affirmed.