Opinion issued March 25, 2010














     

In The
Court of Appeals
For The
First District of Texas




NO. 01-08-00277-CV




MARIA SANTOS DONIHOO, Appellant

v.

VIRGINIA LEWIS AND ELLEN CARSON, AS CO-EXECUTRIXES OF
THE ESTATE OF EDWARD DONIHOO, DECEASED, Appellees




On Appeal from the 220th District Court
Hamilton County, Texas



Trial Court Cause No. HCCV–06–13506




MEMORANDUM OPINION 

          This appeal arises from a contested probate proceeding between appellant,
Maria Santos Donihoo, who is a beneficiary of the estate of Edward Donihoo,
deceased, and appellees, Virginia Lewis and Ellen Carson, who are the independent
executrixes of the estate. Appellant raises eight issues challenging the trial court’s
judgment.
          We affirm.
Factual & Procedural Background
          Edward Donihoo died testate on March 11, 2006. In his Last Will and
Testament, Donihoo bequeathed the majority of his estate to his common-law wife, 
Maria Santos Donihoo (“Maria”). Donihoo’s will specifically gave Maria (1)
908.879 acres of real property located in Hamilton County, Texas and “all farm
equipment, household goods,” and personal property “situated on the 908.879 acres.” 
          The will also provided that Donihoo gave Maria “[a]ll monies standing in my
name . . . on deposit at any bank, savings and loan, or other depository whatsoever”
and “all funds of money which may be on deposit in my name with Merrill Lynch or
any other investment brokerage house; and all stocks, bonds, and securities. . . .” 
From these funds given to Maria, the will specifically excepted sums of money that
had been bequeathed to three other individuals in the will and
any fund or deposit standing in my name or in the name jointly with any
other person which I have designated “Tax Account,” or have by any
other designation made it apparent that such fund or deposit is to be
used for payment of debts, claims and taxes upon my estate. 
The will continued, “Any such ‘tax account’ is and shall be a part of the residue of
my estate.” 
          The will also directed that all debts and taxes owed by the estate should “be
paid in full out of my residuary estate.” It dictated that no debt or taxes owed by the
estate “shall ever be paid from the specific bequests and devises made by me herein,
until the assets of my residuary estate and the proceeds of sale thereof shall be totally
exhausted for the purpose of paying such debts, expenses and taxes.” 
          The will also reflected that Donihoo bequeathed “all the rest and residue of my
estate (residuary estate)” to his sisters, Virginia Lewis and Ellen Carson, and to his
brother, Billy Donihoo. In his will, Donihoo also named his sisters, Lewis and
Carson, as the independent co-executrixes (“the executrixes”) of his estate. 
          Following Donihoo’s death, the executrixes filed an application to probate
Donihoo’s will in the constitutional county court of Hamilton County. The county
court signed an order admitting the will to probate and ordering that letters
testamentary be issued to the executrixes. Several months later, the executrixes filed
an “Inventory, Appraisement, and List of Claims,” which was approved by order of
the county court. The inventory was divided between assets identified as either
Donihoo’s separate property or community property. Among the assets listed as
Donihoo’s separate was a promissory note. The inventory listed it under the heading
“miscellaneous” and described it as a “real estate lien note dated August 29, 2005,
from McCreary/Donihoo Partners, Ltd.” The inventory valued the promissory note
at $1,630,635. The executrixes represented the total value of Donihoo’s estate to be
$5,587,623.77.
          Maria filed an objection to the inventory, indicating that she had not seen it
before it was approved by the county court. Maria complained of “the inclusion of
the Promissory Note as a ‘miscellaneous’ asset.” She asserted, “This Promissory
Note should not be included on the inventory because it is the separate personal
property of Maria Santos Donihoo, thus not part of the estate.” 
          Maria also filed an “Application to Remove Independent Co-Executri[x]es.” 
Maria sought removal on the ground that the executrixes had “embezzled and
misapplied all or part of the estate.” In support of the allegation, Maria attached a
copy of an accounting that had been submitted to the court by the executrixes. The
accounting reflected that the executrixes had taken $126,249.98 from four financial
accounts identified in the inventory and had placed the money in a separate “estate
account,” which was used to pay taxes and debts owed by the estate. 
          Maria also pointed to the will’s language that no debt or taxes owed by the
estate “shall ever be paid from the specific bequests and devises made by me herein,
until the assets of my residuary estate and the proceeds of sale thereof shall be totally
exhausted for the purpose of paying such debts, expenses and taxes.” Maria asserted,
“It is clear from a careful reading of Decedent’s Will that ALL debts of the estate
were to have been paid out of the residue of the estate, and that no specific bequest
was to be disturbed until the residue was ‘totally exhausted.’” She continued, “The
[the executrixes] very carefully and purposefully misapplied just those portions of the
estate bequeathed to [Maria] to pay estate expenses, and failed to follow specific
instructions in the will as to how those debts and expenses were to be paid.” 
          After Maria filed the objection to the inventory and the motion to remove the
executrixes, the county court signed an order, “in accordance with Section 5 of the
Probate Code,”which transferred the contested portion of the probate proceeding to
the District Court of Hamilton County for resolution. 
          Maria filed a petition for declaratory judgment in the district court (hereinafter
“trial court”). She sought a declaration that “the promissory note in the face amount
of $1.6 million,” which was identified in the inventory, had “passed by inter vivos
gift” to Maria before Donihoo’s death and “constitutes her sole and separate
property.” Maria further requested a declaration that there was “no residuary estate”
because the estate did not “possess” the $1.6 million promissory note or a “tax
account.” 
          The executrixes answered and filed a counter-claim for declaratory relief. In
support of their claim, the executrixes alleged that the $1.6 million promissory note
was the separate property of Donihoo. The executrixes further alleged that Maria had
improperly removed the promissory note from Donihoo’s safe deposit box. They
asserted that, despite being requested to do so, Maria had “repeatedly refused” to
provide the promissory note to the executrixes. 
          The executrixes requested that the trial court order Maria “to turn over
possession” of the promissory note to the executrixes. The executrixes asserted that
they had been “required to retain the services of legal counsel to recover” the
promissory note, which was “wrongfully withheld” by Maria. The executrixes
requested that they recover “all costs and attorneys’ fees incurred” by them “through
trial and appeal.” The executrixes also asserted that they were entitled to recover
“costs and reasonable attorneys’ fees” pursuant to the declaratory judgment act.
          The trial court conducted a hearing on Maria’s motion to remove the
executrixes. At the hearing, Maria asserted that the executrixes should be removed
because they had not paid the estate’s debts in the manner directed by the will. Maria
pointed out that the will required that the estate’s debts be paid from any designated
“tax account” and from the residuary estate. She asserted that the executrixes’ acts
of taking funds from bank and brokerage accounts that had been bequeathed to her
violated the terms of the will. Maria alleged that the executrixes had made no attempt
to locate any account that Donihoo had designated as a “tax account” to pay the debts
of the estate. 
          In response, the executrixes asserted that they had not been able to locate any
account designated as a “tax account.” To support this assertion, one of the
executrixes’ attorneys testified that an attempt had been made to locate such an
account, and none had been found. 
          The executrixes argued that they had taken funds from the financial accounts
bequeathed to Maria to pay the estate’s taxes and debts because there were no assets
in the residuary estate. Related to this argument, the executrixes asserted that the
$1.6 million promissory note was an asset of the residuary estate and was not the
separate property of Maria, as she claimed. The executrixes requested the trial court
to order Maria to produce the original promissory note, which they alleged was in her
possession. The executrixes told the court that they had requested Maria to produce
the original promissory note, but she had refused. 
          Maria also testified at the hearing. She stated that the promissory note was in
her possession and that she would produce it. The trial court denied Maria’s request
to remove the executrixes and ordered Maria to produce the original promissory note. 
          In the month following the hearing, Maria claimed that she was unable to
locate the promissory note. The trial court signed an order finding that the original
promissory note “is lost.” The court ordered that a copy of the promissory note,
which was attached to an affidavit of the payor of the note, “shall henceforth be the
enforceable, official, substituted-original promissory note.”
          Maria later non-suited her declaratory judgment claim and amended her
petition to include claims against the executrixes for conversion and breach of
fiduciary duty. Maria alleged that, to pay the estate’s debts, the executrixes had
converted funds that were her separate property and also funds that were specifically
bequeathed to her under the will. Maria claimed that this was contrary to the terms
of the will, which specified that the estate’s debts should be paid from the “tax
account” and from the residuary estate. Maria also claimed that the executrixes had
breached their fiduciary duty to her by failing “to return her separate funds” and by
acting “contrary to the instructions in the will.” 
          On June 1, 2007, Maria’s counsel filed a motion to withdraw. The trial court
signed an order granting the motion on June 27, 2007. 
          The trial court called the case to trial on September 5, 2007. Maria appeared,
pro se, and requested a continuance on the ground that she did not have counsel. The 
court agreed to reset the case until October 10, 2007. The trial court instructed Maria
to retain counsel by that time. 
          The court called the case to trial on October 10, 2007. Maria once more asked
for a continuance. Maria told the trial court that she had spoken with an attorney,
who had agreed to represent her, but then had failed to appear for trial that morning. 
The trial court again granted the continuance and reset trial for December 5, 2007.
          On December 5, 2007, Maria again arrived in court unrepresented by counsel. 
She told the court, “I still haven’t found an attorney.” The trial court reminded Maria
that it had continued trial twice to allow her to find counsel. The court informed
Maria “we’re going forward” with trial. The trial court asked Maria if she was ready
to proceed with her case. Maria told the court, “Well, I don’t have no idea what we
are here about, what I’m in court for. I have no papers, have been served no papers
to know what’s going on.” The trial court then allowed the executrixes to present
evidence to support their claims. 
          The executrixes, Virginia Lewis and Ellen Carson, testified at the bench trial. 
Through their testimony, the executrixes showed that the $1.6 million promissory
note was Donihoo’s separate property when he died. According to Lewis’s
testimony, the promissory note “was for the sale of land that [Donihoo] had owned
since he was a very young man.” Lewis told the court that Donihoo had acquired the
land when he was 17 or 18 years old. Donihoo was 78 years old when he died. 
          In her testimony, Carson agreed that Donihoo had owned the subject property
since he was 17 or 18 years old. Carson also testified that Donihoo had been married
to another woman before his marriage to Maria. 
          Carson requested that the court approve the inventory and appraisement, which
had been previously filed in the county court. She also requested that the promissory
note, and monies that had been paid on the note, “pass . . . with the promissory note.” 
          Carson further testified that the executrixes “had to go through extensive
proceedings just to finally determine that the [promissory note] was lost.” She stated
that the executrixes were required to retain counsel to ensure that “the benefits of the
promissory note would pass to the proper people who were beneficiaries under the
will.” Carson confirmed that the executrixes requested the trial court to award them
attorneys’ fees “out of the case proceeds that would otherwise go to [Maria] because
she is the one that caused the estate to incur these expenses.” 
          The executrixes’ three attorneys also testified at trial. The attorneys testified
regarding the procedural history of the case and regarding the amount of attorneys’
fees incurred by the executrixes with respect to the contested portions of the probate
proceeding. 
          Although she was in attendance, pro se, Maria offered no evidence at trial to
support her claims. She also did not cross-examine the executrixes’ witnesses or
object to any of their evidence. 
          Following trial, the trial court signed a judgment in favor of the executrixes. 
The judgment recited, in part, that Maria’s conversion and breach of fiduciary duty
claims were “not supported by any evidence.” The judgment declared that the
promissory note was “an asset owned by [Donihoo] at his death.” The judgment
ordered that the promissory note and payments that had been made on the note and
deposited in the court’s registry would “pass under the ‘Residuary Bequest’ provision
of [Donihoo’s will].” 
          The trial court also awarded the executrixes $30,000 “for legal services
rendered in connection with representing the Estate in connection with the declaratory
judgment proceedings” and a total of $23,000 for appellate attorneys’ fees and costs. 
The court ordered that these awards be paid “directly from funds that would otherwise
be the subject of specific bequests” to Maria under the will. 
          The trial court also denied Maria’s objection to the inventory. The court
approved the executrixes’ “Inventory, Appraisement and List of Claims” and also
approved the accounting filed by the executrixes’ attorney. 
          On January 7, 2008, Maria’s new counsel, Carolyn Barnes, filed a motion for
new trial. In the motion, Maria alleged that she should be granted a new trial because
she “had a constitutional right to be represented by counsel of her choice.” She
continued,“[T]he inability of [Maria’s] retained counsel to be present for the hearing
on December 5, 2007 was not the result of any lack of diligence or intention by
[Maria], but solely the result of the undersigned counsel’s inability to attend the
hearing on such short notice due to a previous commitment.” 
          Maria also alleged that the executrixes’ counsel acted unethically. Maria
pointed out that the executrixes’ counsel had also drafted Donihoo’s will. She
claimed that the counsel’s representation of the executrixes in the litigation was a
conflict of interest. Maria further asserted that the executrixes’ counsel had conspired
with the executrixes to deprive Maria of “her estate and property.”


 Maria further
alleged that the evidence was insufficient to support the trial court’s judgment.
          Maria’s counsel called her to testify at the hearing on the motion for new trial. 
Maria offered testimony to show that Donihoo had given her the promissory note
before his death. The executrixes objected to the relevancy of Maria’s testimony, and
the trial court sustained the objection. Maria’s counsel then stated that she would
make a bill of exception containing Maria’s testimony, which the trial court
permitted.
          During Maria’s testimony, an exchange occurred between Maria’s counsel, the
trial court, and the executrixes’ counsel in which Maria’s counsel became
disrespectful to the court. The trial court warned Maria’s counsel that, if she
persisted, she would be held in contempt of court. Maria’s counsel continued to
insult the trial court. The court declared Maria’s counsel to be in contempt and ended
the hearing. The trial court did not expressly rule on Maria’s motion for new trial,
and it was ultimately overruled by operation of law. 
          Maria now appeals the trial court’s judgment, raising eight issues.



Motion for New Trial
          In her first issue, Maria contends, “The trial court abused its discretion in
denying [her] Motion for New Trial and in refusing to allow her to present her
evidence and complete her bill for appeal at the hearing on the Motion for New
Trial.” Maria argues, “There was an abuse of discretion by the trial judge in allowing
his personal anger to lead to dereliction of judicial duties when he suddenly
terminated the proceedings and instructed the court reporter to ‘quit’ taking down
testimony.” Maria points out, “When a motion for new trial presents a question of
fact upon which evidence must be heard, the trial court is obligated to hear such
evidence if the facts alleged by the Movant would entitle him to a new trial.” She
asserts, “The trial judge failed to permit the introduction of relevant and reliable
evidence to prove the corruption that had occurred in securing this Final Judgment
and to prove that [Maria] had a meritorious claim to the promissory note.” 
          It is helpful to set out the exchange between the trial court and Maria’s counsel,
which precipitated the termination of the new trial hearing. Before the exchange, the
executrixes’ counsel had inquired whether Maria’s testimony was intended to be part
of the bill of exception. The following exchange then occurred:
THE COURT: Well, as far as I know you’re still on a bill. Now you are
telling me that you are not.
 
[Maria’s counsel]: I’m not on the bill.
 
THE COURT: All right.
 
[Maria]: Mrs. Barnes, I’m sorry.
 
[Maria’s counsel]: It’s all right—
 
[Executrixes’ counsel]: Objection on relevance.
 
THE COURT: Sustained.
 
[Maria’s counsel]: It’s not your fault. It’s not your fault. This is what
happens when people have things to hide.
 
[Executrixes’ counsel]: I object to the side-bar, Your Honor.
 
THE COURT: I’ll sustain that. Counsel, you’re fixing to be held in
contempt.
 
[Maria’s counsel]: Why would that not surprise me, Judge? I really,
really truly just knew in my gut I was coming up here for a fair and
impartial hearing. I trusted that. I believed in it. I assured my client
that all she had to do is tell her story and any honest, honorable court
would give her a new trial. This was a gross miscarriage of justice and
you would have to be blind not to see it. 
 
THE COURT: I think justice is blind in Hamilton County as it’s
supposed to be.
 
[Maria’s counsel]: And deaf, and nonexistent.
 
THE COURT: And that’s in contempt. 
 
[Maria’s counsel]: I watched you all morning, Judge, it’s very clear
what’s going on in this county, very clear why Mrs. Donihoo—
 
THE COURT: I’m not listening to any more, because I’m not going to
get involved with any more of it. That’s it. You are through.
 
[Maria’s counsel]: I still need to make a bill.
 
THE COURT: You’re through. You can quit—
 
[Maria’s counsel]: So you’re refusing to let us make an appellate bill,
and you’ve told the court reporter to quit, and the Judge is exiting the
courtroom and that’s justice in Hamilton County.
          The record shows that, before this exchange, the trial court had allowed
Maria’s counsel to fully cross-examine one of the executrixes’ attorneys. Maria’s
counsel had also been cross-examining Maria for 12 pages in the record when the
exchange occurred. In addition, prior to this time, the trial court had placed no
restrictions or limitations on counsel’s ability to make her bill of exceptions.
          The record further reveals that, during the hearing, Maria’s counsel had made
additional disrespectful remarks to the trial court judge. She told the judge that he
was not “paying attention” and had not “looked at the case law.” Maria’s counsel
remarked that the judge was “sustaining any objection” that the executrixes’ counsel
made. 
          Government Code section 21.001(b) provides, “A court shall require that
proceedings be conducted with dignity and in an orderly and expeditious manner and
control the proceedings so that justice is done.” Tex. Gov’t Code Ann. § 21.001(b)
(Vernon 2004). Courts possess inherent power to discipline an attorney’s behavior. 
Merrell Dow Pharmaceuticals, Inc. v. Havner, 953 S.W.2d 706, 732 (Tex. 1997)
(order on reh’g). “‘Courts of justice are universally acknowledged to be vested, by
their very creation, with power to impose silence, respect, and decorum, in their
presence.’” Id. (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S. Ct. 2123,
2132 (1991)). 
          Here, the record shows that the trial court had been patient and tolerant with
Maria’s counsel. The court gave her ample opportunity to make a record. The court
warned counsel to cease her disrespectful behavior, or face contempt. Counsel did
not heed the warning. 
          As the San Antonio court of appeals has noted, “Zealous representation does
not and cannot include degrading the court in the hopes of gaining a perceived
advantage.” Johnson v. Johnson, 948 S.W.2d 835, 840 (Tex. App.—San Antonio
1997, writ denied). Similarly, we have explained that “lawyers have the
responsibility to conduct themselves with respect for the tribunal and the legal
system” and “not engage in behavior likely to invoke proper admonishment from the
court.” Metzger v. Sebek, 892 S.W.2d 20, 38 (Tex. App.—Houston [1st Dist.] 1994,
writ denied). In this case, Maria’s counsel engaged in disrespectful behavior that
degraded the proceedings and denigrated the court. She persisted with this behavior,
despite the trial court’s admonishment. Maria cannot now benefit on appeal from the
transgressions of her chosen counsel in the lower court. Nor should the trial court be
held to have abused its discretion for preserving the integrity of the proceedings, as
it is obligated to do. See In re Maloney, 949 S.W.2d 385, 388 (Tex. App.—San
Antonio 1997, no writ) (explaining that judges have obligation to act to maintain the
respect due a court and the legal system when litigants or attorneys engage in judicial
denigration).
          We hold that Maria has not shown that the trial court abused its discretion with
respect to her motion for new trial. We overrule Maria’s first issue. 
Sufficiency of Evidence
          In her second issue, Maria contends, “There was no evidence or insufficient
evidence to support Final Judgment entered on December 5, 2007.”


 
A.      General Recitals
          Maria begins by attacking the judgment’s recitals. Recitals contained in the
judgment are presumed true unless there is a conflict between the judgment and
record. Parks v. Developers Sur. and Indem. Co., No. 05-08-00910-CV, 2010 WL
11312 at *3 (Tex. App.—Dallas Jan. 5, 2010, no pet. h.) (citing MJR Fin., Inc. v.
Marshall, 840 S.W.2d 5, 9 (Tex. App.—Dallas 1992, no writ)). Maria contends,
“There is no evidence to support the finding that [Maria] appeared without counsel
and announced ready for trial.” 
          Here, the record shows that Maria appeared at trial without counsel. The
record further shows that the trial court had given Maria two prior continuances to
retain counsel, and she had failed to do so. As discussed in more detail infra, the trial
court did not err in proceeding with trial under the circumstances.
          Maria also complains of the recital that the court “considered . . . all arguments
of both counsel and individual parties.” Although the record reflects that Maria was
unrepresented at trial, there is nothing in the record to show that this recital is untrue. 
B.      Promissory Note
          Maria also assails the portions of the judgment that address the promissory
note. Maria first complains of the recital that the trial court had “previously
determined by its Order in this cause signed March 14, 2007, that the [promissory
note] had been lost; and the Court designated a substitute-original note.” 
          The record shows that Maria represented to the trial court, at a pre-trial hearing,
that she had possession of the promissory note. One month after this representation,
Maria told the court in an affidavit that she was unable to locate the note. One of the
executrixes, Virginia Lewis, testified at trial that she had searched for the promissory
note and could not locate it. Thus, the record supports the judgment’s recital that the
promissory note is “lost.” 
          Maria also challenges the legal and factual sufficiency of the evidence to
support the trial court’s declaration, in the decretal portion of the judgment, that the
promissory note, including “payments made thereon,” was an asset owned by
Donihoo at the time of his death. Maria further challenges the portion of the
judgment ordering that the promissory note and “subsequent payments thereon pass
under the ‘Residuary Bequest’ provision” of Donihoo’s will. 
          In their counter-claim, the executrixes alleged that the promissory note was
Donihoo’s “sole and separate property.” Throughout the litigation, Maria claimed
that Donihoo had gifted the promissory note to her before his death. At trial, the
executrixes presented evidence to support their claim that the promissory note was
Donihoo’s separate property, which passed under the residuary clause of his will. 
Maria made no attempt to cross-examine, rebut, or object to the executrixes’ evidence
at trial. Nor did she offer any evidence regarding the promissory note or Donihoo’s
alleged inter vivos gift of the note to her.
          When deciding a legal-sufficiency challenge raised by a defendant to a claim,
we determine whether there is evidence that would enable reasonable and fair-minded
people to reach the verdict under review. City of Keller v. Wilson, 168 S.W.3d 802,
827 (Tex. 2005). To make this determination, we (1) credit all favorable evidence
that reasonable jurors could believe; (2) disregard all contrary evidence, except that
which they could not ignore; (3) view the evidence in the light most favorable to the
verdict; and (4) indulge every reasonable inference that would support the verdict. 
Id. at 822, 827. But, we may not disregard evidence that allows only one inference.
Id. at 822.
          When conducting a factual-sufficiency review, we consider all the evidence in
the record, both supporting and conflicting, and set aside the verdict only if it is so
contrary to the overwhelming weight and preponderance of the evidence that it is
clearly wrong and manifestly unjust. Plas-Tex Inc. v. U.S. Steel Corp., 772 S.W.2d
442, 445 (Tex. 1989); Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). In an appeal
from a bench trial, we do not invade the fact-finding role of the trial court, which
alone determines the credibility of the witnesses, the weight to give their testimony,
and whether to accept or reject all or any part of that testimony. Nordstrom v.
Nordstrom, 965 S.W.2d 575, 580–81 (Tex. App.—Houston [1st Dist.] 1997, pet.
denied).
          It is undisputed that the promissory note evidenced approximately $1.6 million
owed to Donihoo by the buyer of 80 acres of real property that Donihoo had sold. At
trial, the executrixes’ testimony indicated that Donihoo had owned the 80 acres for
many years before his common-law marriage to Maria. The executrixes’ testimony
indicated that Donihoo had purchased the land when he was 18 or 19 years old and
that he was 78 years old when he died. It is undisputed that Maria and Donihoo had
been married for approximately 28 years when he died. The testimony also indicated
that Donihoo had been married and divorced before he entered into the common-law
marriage with Maria. Such evidence supported a finding that the promissory note
was Donihoo’s separate property at the time of his death.
          The executrixes also offered Donihoo’s will into evidence at trial. The will
does not mention the $1.6 million promissory note specifically or promissory notes
generally. Accordingly, the trial court properly concluded that the $1.6 million
promissory note passed under the will’s residuary clause, as asserted by the
executrixes.
          Applying the appropriate standards of review, we hold that the evidence is
legally and factually sufficient to support the trial court’s declarations in the judgment
that the promissory note, including “payments made thereon,” was an asset owned by
Donihoo at the time of his death and that the promissory note and “subsequent
payments thereon pass under the ‘Residuary Bequest’ provision” of Donihoo’s will.
C.      Maria’s Claims 
          Maria also challenges the legal and factual sufficiency of the trial court’s ruling
in the judgment that her “common law conversion claim and . . . breach of fiduciary
duty claim . . . are not supported by any evidence presented in this cause.” 
          When a party attacks the legal sufficiency of an adverse finding on an issue on
which she has the burden of proof, she must demonstrate on appeal that the evidence
establishes, as a matter of law, all vital facts in support of the issue. Dow Chem. Co.
v. Francis, 46 S.W.3d 237, 241 (Tex. 2001). When a party attacks the factual
sufficiency of an adverse finding on an issue on which she has the burden of proof,
she must demonstrate on appeal that the adverse finding is against the great weight
and preponderance of the evidence. Id. at 242.
          As mentioned, Maria offered no evidence or argument at trial to prove her
claims. Maria points to evidence showing that the executrixes took funds from
accounts specifically given to Maria in the will and used these funds to pay the estates
debts and taxes. She claims this supports her conversion and breach of fiduciary duty
claims. We disagree that such evidence necessarily, without more, supports her
claims. This is particularly true when viewed in conjunction with Donihoo’s will,
which provided that assets from the will’s specific bequests could be used to pay the
estate’s debts when there were no residuary assets. 
          Applying the appropriate standards of review, we hold that Maria did not meet
her appellate burden with respect to her legal and factual sufficiency challenges to the
trial court’s ruling that her conversion and breach of fiduciary duty claims are without
evidentiary support.



          We overrule Maria’s second issue. 
Withdrawal of Counsel
          In her third issue, Maria contends, “The granting of [her] counsel’s motion to
withdraw without a hearing violated [her] constitutional rights.”
          The record reflects that Maria’s counsel filed a motion to withdraw on June 1,
2007. Maria’s counsel represented that “[g]ood cause exists for withdrawal as
counsel . . . [is] unable to effectively communicate with Maria Donihoo so as to be
able to adequately represent her. Furthermore, Plaintiff [Maria] is in breach of her
employment contract with Movants.” Maria’s counsel represented that “withdrawal
is not sought for delay, but that [sic] Plaintiff may hire counsel with whom she is
willing and able to cooperate and compensate.” The attorneys represented that Maria
had been notified of the motion and of her right to object to the motion. The
attorneys further represented that “[t]here are no pending settings or deadlines in this
case.” 
          On June 22, 2007, Maria’s counsel sent a letter to the trial court requesting the
trial court to grant their motion to withdraw without conducting a hearing. In the
letter, counsel represented that Maria had “expressed no objection to our withdrawal.” 
Counsel attached copies of receipts and notifications that had been provided to Maria
regarding the motion to withdraw. 
          The trial court granted counsel’s motion to withdraw on June 27, 2007, without
conducting a hearing.
          On appeal, Maria asserts that her constitutional right to be represented by
effective counsel was violated by the trial court, when it granted the motion to
withdraw. She contends that the trial court failed to ensure that she would be
represented by effective counsel after it granted the motion. 
          We recognize that the constitutional right to effective assistance of counsel has
been extended to certain civil proceedings, such as termination of parental rights
cases, see In re M.S., 115 S.W.3d 534, 544–45 (Tex. 2003), and involuntary civil
commitment proceedings, see In re Protection of H.W., 85 S.W.3d 348, 355–56 (Tex.
App.—Tyler 2002, no pet.). We have found no Texas case law, however, indicating
that a plaintiff has a constitutional right to effective assistance of counsel in a
contested probate matter. See Cherqui v. Westheimer St. Festival Corp., 116 S.W.3d
337, 343–44 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (“[I]t is well
established that the doctrine of ineffective assistance of counsel does not extend to
civil cases.”). 
          Moreover, as pointed out by the executrixes, the record shows that Maria knew
how to retain counsel. The record shows that Maria was represented by at least four
different law firms during the course of the probate proceedings. The record also
shows that Maria had time to retain counsel. And she has never claimed that she did
not have the financial means to retain counsel. The case was not tried to the bench
until more than five months after the court signed the order of withdrawal. 
          In addition, Maria did not object in the trial court to the her counsel’s motion
to withdraw or to the trial’s order granting the withdrawal. Because she failed to raise
the complaints regarding her counsel’s withdrawal in the trial court, Maria has
waived these complaints for appeal. See Tex. R. App. P. 33.1(a); see also Rittenhouse
v. Sabine Valley Ctr. Found., Inc., 161 S.W.3d 157, 166 (Tex. App.—Texarkana
2005, no pet.) (holding that appellant waived right to complain about attorney’s
withdrawal and attendant violation of his due process rights when he did not raise
complaint in trial court).
          We overrule Maria’s third issue.
Setting of Case for Trial
          In her fourth issue, Maria contends, “The setting of the case for trial on the
merits immediately after allowing [Maria’s] counsel to withdraw violated [her]
constitutional rights.” Maria asserts that her due process rights were violated because
the executrixes set the case for trial “immediately” following her counsel’s
withdrawal and before discovery was complete. 
          Maria’s due-process argument is not supported by the record. The trial court
granted two continuances of trial to allow Maria to obtain counsel. Maria represented
to the trial court that she planned to obtain counsel. The executrixes did not object
to the continuances on either occasion. Maria had five months to retain counsel
before trial, and she failed to do so. 
          In addition, Maria did not object in the trial court that her due process rights
were violated. Thus, she has waived this complaint for appeal. See Tex. R. App. P.
33.1(a); Rittenhouse, 161 S.W.3d at 166; see also Graves v. Alders, 132 S.W.3d 12,
16 (Tex. App.—Beaumont 2004, pet. denied) (holding appellant waived claim that
trial court violated due process rights by denying continuance to complete discovery).
          We overrule Maria’s fourth issue. 
Removal of Independent Co-Executrixes 
          In her fifth issue, Maria asserts, “There was no evidence or insufficient
evidence to support the trial court’s denial of the Application to Remove Independent
Co-Executrixes and order the turn over of the original promissory note to the
executrixes.” 
          Probate Code section 149C provides that an independent executor may be
removed by the court when any of six statutory grounds for removal have been met.


 
See Tex. Prob. Code Ann. § 149C(a) (Vernon Supp. 2009). Maria had the burden
of establishing a violation of section 149C in the trial court. Kappus v. Kappus, 284
S.W.3d 831, 835 (Tex. 2009). On appeal, Maria must demonstrate that the trial court
abused its discretion when it denied her request for removal. See id. (“Once a
violation of one of the six grounds [in section 149C] has been proven, the trial court
has discretion to decide whether the violation warrants removal.”).
          Maria contends that the executrixes should have been removed because they
had a conflict of interest. Maria points to the executrixes’ claim that the promissory
note was part of the residuary estate. Maria further points out that the executrixes
were beneficiaries of the residuary estate. She posits this created a conflict of interest
between “their personal financial interests and their fiduciary duty to the Estate.” 
          A review of the record reveals that Maria never sought removal of the
executrixes on this ground.


 Thus, it cannot serve to establish that the trial court
abused its discretion for failing to remove the executrixes. See Tex. R. App. P.
33.1(a).
          In the trial court, Maria asserted that the executrixes should be removed
because they had “embezzled and misapplied all or part of the estate.” See Tex.
Prob. Code Ann. § 149C(a)(2). Maria argued that the executrixes had wrongfully
transferred funds from accounts that had been specifically bequeathed to her in the
will and used them to pay the estate’s debts. Maria pointed out that, pursuant to the
will, the executrixes could not use funds from any specific bequests to pay the estate’s
debts until “the residue of the estate” had been “totally exhausted.” Maria also
pointed out that the will provided that the estate’s debts should first be paid from any
account designated as a “tax account.” 
          At the hearing on the motion, the executrixes did not dispute the reading of the
will, but countered that they did not have access to any residue of the estate, nor could
they locate any “tax account.” For this reason, they asserted that they were permitted,
under the will’s provisions, to transfer funds from specific bequests made in the will
to pay the estate’s debts. The executrixes argued that the only residuary asset was the
$1.6 million promissory note of which they did not have possession. The executrixes
averred that they did not have access to the promissory note because it was in the
possession of Maria. The executrixes’ counsel told the trial court that the executrixes
had made many attempts to obtain the promissory note from Maria to no avail. Thus,
whether the promissory note was a residuary asset was a contested issue.
          Maria testified at the hearing that she believed that she had possession of the
promissory note and agreed to retrieve it. It was clear from the counsel’s arguments
at the hearing that Maria also claimed an ownership interest in the promissory note. 
          The executrixes’ attorney testified that the executrixes did not have the
promissory note and were unable to locate any “tax account.” He testified that funds
were transferred from accounts specifically bequeathed to Maria because the estate’s
taxes had come due and needed to be paid. He also anticipated that other taxes would
need to be paid in the future, as well as other debts of the estate. 
          Given the evidence and arguments of counsel at the hearing, Maria has not
shown that the trial court abused its discretion when it denied her motion to remove
the executrixes.
          We overrule Maria’s fifth issue. 
Inventory, Appraisement, and List of Claims, and the Accounting
          In her sixth issue, Maria asserts, “There was no evidence or insufficient
evidence to support the trial court’s approval of the Inventory, Appraisement, and List
of Claims, and [the] ‘accounting.’”
          As previously described, Donihoo’s will was admitted to probate in the
constitutional county court of Hamilton County. Letters testamentary were issued to
the executrixes and the county signed an order approving the executrixes’ Inventory,
Appraisement, and List of Claims (“the inventory”). Maria then filed her “Motion
Objecting to Inventory.” Maria specifically objected to the county court’s approval
of the inventory on the ground that it characterized the $1.6 million promissory note
as an asset of Donihoo’s estate. Maria asserted that the note was not an asset of the
estate and should not be included in the inventory. Maria alleged that the promissory
note was her “separate personal property.” For this reason, Maria requested that the
court disapprove the inventory. 
          As discussed, Maria also filed a motion to remove the executrixes. In the
motion, Maria alleged that the executrixes had “embezzled and misapplied all or part
of the estate.” Maria specifically cited the executrixes’ accounting as demonstrating
that the executrixes had wrongfully taken funds bequeathed to Maria. 
          Following the filing of these motions, the county court transferred “the
contested portion of the [probate] proceedings” to the Hamilton County District
Court. There, Maria asserted additional claims against the executrixes, including
claims for conversion and breach of fiduciary duty. These claims were based on the
executrixes’ transfer of funds from bank and brokerage accounts, which had been
specifically bequeathed to Maria. The executrixes had used the transferred funds to
pay the taxes and debts of the estate. 
          The executrixes filed a counter-claim against Maria in which they alleged that
the promissory note was “the sole and separate property” of Donihoo and the property
of his estate. Until and through the trial of this matter, the parties disagreed on the
inventory’s characterization of the promissory note as Donihoo’s separate property.


 
          At trial, the executrixes introduced the inventory into evidence through their
attorney, Tom White. It was the same inventory that the county court had previously
approved and was contained in the trial court’s files. White testified to the validity
of the information contained in the inventory by stating that it was the same
information that he had used to prepare the estate’s federal income tax form. 
          The trial court resolved the contested issue, on which Maria sought to have the
inventory disapproved, against Maria. Specifically, the trial court concluded that the
inventory’s characterization of the promissory note as Donihoo’s separate property
was correct. As discussed, the executrixes offered ample evidence to support this
conclusion. Thus, the trial court properly approved the inventory.
          Through White’s testimony, the executrixes also introduced into evidence “the
accounting prepared by [attorney] Thomas E. White, covering period from the time
that [the executrixes] qualified on May 9, 2006, through November 16, 2006.” White
testified regarding the figures reflected in the accounting that he had prepared. He
explained that the estate’s taxes were due immediately following Donihoo’s death and
needed to be paid. White explained that, because of the outstanding debts of the
estate and a lack of residuary assets, the executrixes found it necessary to transfer
funds from accounts that had been bequeathed to Maria to an estate account to the
estate’s taxes and debts. Maria did not cross-examine or rebut the executrixes’
evidence related to the accounting. We conclude that the trial court properly
approved the accounting.
          We overrule Maria’s sixth issue. 
Attorney’s Fees
          In her seventh issue, Maria contends, “There was no segregation of legal fees
and there was no evidence or insufficient evidence to support an award of attorney’s
fees.” 
          In their counter-claim, the executrixes cited Civil Practice and Remedies Code
section 37.009, the attorney’s fee provision of the Declaratory Judgment Act, as a
basis to recover attorney’s fees. The trial court’s judgement awards the executrixes
$30,000 in attorney’s fees “for legal services rendered in connection with the
representing [sic] the Estate in connection with the declaratory judgment proceedings
in this cause.” The judgment includes an additional award of appellate attorney’s
fees.
A.      Segregation of Attorney’s Fees
          Maria challenges the attorney’s fees award by first asserting that “Defendants
failed to segregate the amount of attorney’s fees incurred as a result of their alleged
claim for declaratory relief from their other claims and defenses.” The record shows
that, although she mentioned it in her motion for new trial, Maria did not raise her
segregation objection before the trial court rendered judgment. Accordingly, Maria
has waived this objection on appeal. See Tex. R. App. P. 33.1(a)(1) (providing that
a party must make “timely request, objection, or motion” to present complaint for
appellate review); Red Rock Properties 2005, Ltd. v. Chase Home Fin., L.L.C., No.
14-08-00352-CV, 2009 WL 1795037 at *7 (Tex. App.—Houston [14th Dist.] June
25, 2009, no pet.) (mem. op.) (holding that raising segregation issue for first time in
motion for new trial does not preserve objection for appeal); Kleas v. BMC W. Corp.,
No. 03-05-00190-CV, 2008 WL 5264883, at *5–6 (Tex. App.—Austin Dec. 19, 2008,
pet. denied) (mem. op.) (same); see also Green Intern., Inc. v. Solis, 951 S.W.2d 384,
389 (Tex. 1997) (“If no one objects to the fact that the attorney’s fees are not
segregated as to specific claims, then the objection is waived.”).
B.      Attorney’s Fees Supported by Pleadings 
          Maria also asserts that the attorney’s fees award was not properly supported by
the executrixes’ pleadings. We disagree. The executrixes specifically pleaded and
cited section 37.009 of the Declaratory Judgment Act as a basis for their attorney’s
fees request. See Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (Vernon 2008) (“In
any proceeding under this chapter, the court may award costs and reasonable and
necessary attorneys’ fees as are equitable and just.”). 
          Even if unpleaded, the record reflects that the attorney’s fees issue was tried
by consent. Unpleaded claims or defenses that are tried by express or implied consent
of the parties are treated as if they had been raised by the pleadings. See Roark v.
Stallworth Oil & Gas, Inc., 813 S.W.2d 492, 495 (Tex. 1991). The party who allows
an issue to be tried by consent and who fails to raise the lack of a pleading before
submission of the case cannot later raise the pleading deficiency for the first time on
appeal. Id. 
          To determine whether an issue was tried by consent, we examine the record not
for evidence of the issue, but rather for evidence of trial of the issue. Hartford Fire
Ins. Co. v. C. Springs 300, Ltd., 287 S.W.3d 771, 780 (Tex. App.—Houston [1st
Dist.] 2009, no pet.). A party’s unpleaded issue may be deemed tried by consent
when evidence on the issue is developed under circumstances indicating that both
parties understood the issue was in the case, and the other party failed to make an
appropriate complaint. Id.
          At trial, the executrixes made a clear request for attorney’s fees. To support
their request, the executrixes offered evidence in the form of affidavits and testimony
provided by their attorneys. Maria made no objection to the executrixes’ request for
attorney’s fees or to the evidence supporting the request. Accordingly, we conclude
that the issue of attorney’s fees was tried by consent, even if unpleaded. See Estopar
Holdings, Inc. v. Advanced Metallurgical Tech., Inc., 876 S.W.2d 205, 210 (Tex.
App.—Fort Worth 1994, no writ) (concluding attorney’s fees award in declaratory
judgment action tried by consent); see also Tex. R. Civ. P. 67. 
C.      Evidence Supporting Attorney’s Fees
          In a declaratory judgment action, “the court may award costs and reasonable
and necessary attorneys’ fees as are equitable and just.” Tex. Civ. Prac. & Rem.
Code Ann. § 37.009. Maria further asserts that the attorney’s fees award lacked
sufficient evidentiary support. She also contends that the award was not “reasonable
and necessary” or “equitable and just.” 
          The grant or denial of attorney’s fees in a declaratory judgment action lies
within the discretion of the trial court, and its judgment will not be reversed on appeal
absent a clear showing that it abused its discretion. Oake v. Collin County, 692
S.W.2d 454, 455 (Tex. 1985). A trial court abuses its discretion if its decision is
arbitrary, unreasonable, and without reference to guiding principles. Goode v.
Shoukfeh, 943 S.W.2d 441, 446 (Tex. 1997). When reviewing a trial court’s decision
for abuse of discretion, we must view the evidence in the light most favorable to the
trial court’s ruling and indulge every presumption in its favor. Phillips & Akers, P.C.
v. Cornwell, 927 S.W.2d 276, 279 (Tex. App.—Houston [1st Dist.] 1996, no writ.). 
An attorney’s fees award must be reasonable and necessary, which are questions of
fact, as well as equitable and just, which are questions of law. Bocquet v. Herring,
972 S.W.2d 19, 21 (Tex. 1998).
          Here, much of Maria’s argument that the award was neither reasonable and
necessary nor equitable and just centers on her assertions that the attorney’s fees were
not segregated and that the executrixes did not properly plead an attorney’s fees
request. Maria also assails the attorney’s fees award on the ground that the
executrixes had breached their fiduciary duty. As discussed supra, these contentions
are either not preserved or not supported in the record; thus, they cannot serve to
show that the attorney’s fees award was not reasonable and necessary or equitable and
just.
          Maria also asserts that there is “no evidence or insufficient evidence” to
support the award. At trial, three attorneys representing the executrixes provided
testimony to support the attorney’s fees award. Each attorney also signed an affidavit
supporting the requested fees. 
          In their trial and affidavit testimony, the attorneys detailed the specific legal
services each had performed for the executrixes and the fees that he had charged for
the services. Each attorney testified that his fees were “reasonable and necessary.” 
The total sum of fees detailed in the attorneys’ testimony exceeded the amount of fees
awarded by the trial court against Maria. 
          We conclude that Maria has not shown that the trial court abused its discretion
when it awarded attorney’s fees to the executrixes. See id. We overrule Maria’s
seventh issue.
Indispensable Party
          In her eighth issue, Maria asserts, “Billy Donihoo [the decedent’s brother] was
an indispensable party, who was not joined.” Regardless of the propriety of this
claim, Maria failed to preserve this issue for appeal by raising it in a timely objection
in the trial court. See Jones v. LaFargue, 758 S.W.2d 320, 324 (Tex. App.—Houston
[14th Dist.] 1988, writ denied); Jackson, 610 S.W.2d at 522; see also Tex. R. App. P.
33.1(a).
          We overrule Maria’s eighth issue.
Conclusion
          We affirm the judgment of the trial court.
 
 
                                                             Laura Carter Higley
                                                             Justice

Panel consists of Chief Justice Radack and Justices Alcala and Higley.